UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:26-cv-00019-WLH-MBK | Date | July 28, 2026 |
|---|---|---|---|
| Title | ***The Honest Company, Inc., v. Butterblu, LLC*** | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Claudia Garcia-Marquez | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:   (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [18]**

The Court is in receipt of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint or, in the alternative, for the Court to Decline to Accept Supplemental Jurisdiction Over Plaintiff's State-law Claims (the "Motion").  (Mot., Dkt. No. 18).[1]  No

---

[1] In support of the Motion, Butterblu submits a Request for Judicial Notice ("RJN") attaching the following eight exhibits: (1) *Butterblu, LLC v. The Honest Company, Inc.*, LASC Case No. 26SMCV00800, Complaint for Breach of Contract and Other Claims filed in Los Angeles Superior Court on February 11, 2026; (2) *The Honest Company, Inc. v. Butterblu, LLC*, Complaint, Case No. 2:25-cv-10629-AS, filed November 5, 2025; (3); *The Honest Company, Inc. v. Butterblu, LLC*, Notice of Voluntary Dismissal of Claims Against Defendant Butterblu, LLC Pursuant to Rule 41(a)(1)(A)(i), Case No. 2:25-cv-10629-AS, filed November 21, 2025; (4) The Honest Company, Inc., Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2025; (5) The Honest Company, Inc., Q4 & FY 2025 Earnings Update investor presentation dated February 25, 2026; (6) The Honest Company, Inc., Q3 2025 Earnings Script/Transcript; (7) Butterblu webpage titled "A Note From Our Founder" available at https://butterblu.com/pages/a-note-from-our-founder, captured on April 29, 2026; and (8) Butterblu homepage/navigation/footer context page, available at https://butterblu.com/, captured on April 29, 2026.  Honest "objects to Butterblu's reliance on any such materials to the extent offered as purported proof on disputed questions of fact in connection with Butterblu's Rule 12(b)(6) arguments" but "does not oppose the Court taking judicial notice of the existence of documents or agreements incorporated by reference in the FAC or that have been filed in state or federal court to resolve the Rule 12(b)(6) motion."  (Opp'n at 4).  A court may properly take judicial notice of: (1) material which is included as part of the complaint or relied upon by the complaint; and (2) matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  To the extent that the exhibits are referenced in this Order, the Court **GRANTS** Butterblu's RJN.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Dkt. No. 11 at 16). Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. For the reasons explained herein, the Court **GRANTS** in part and **DENIES** in part.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff, the Honest Company, Inc. ("Honest") initiated this action against Butterblu, LLC ("Butterblu" and, collectively with Honest, the "Parties"). The First Amended Complaint ("FAC") alleges the following causes of action: (1) Federal Trademark Infringement; (2) Federal Trade Dress Infringement; (3) Federal False Claim Advertisement/Unfair Competition; (4) Breach of Contract, Including the Covenant of Good Faith and Fair Dealing; (5) Breach of Fiduciary Duty; (6) Unjust Enrichment, (7) Declaratory Relief. (FAC, Dkt. No. 15).

Honest is a personal care company that sells products in the diaper and wipes, skin and personal care, and household and wellness categories. (*Id.* ¶ 1). Since 2013, Honest has used the trademark HONEST in connection with the manufacture, advertising, and sale of baby products. (*Id.* ¶ 14). Honest possesses two trademarks for HONEST registered with the USPTO for swaddling and crib blankets and various children and infant related products. (*Id.*, Ex. A & B, Dkt. Nos. 15-1, 15-2). Honest is also the owner of two trademarks for HONEST BABY CLOTHING for baby and toddler-related products. (*Id.*, Dkt. No. 15-4, 15-5, Ex. D & E). Honest also owns a trademark for its logo. (*Id.*, Dkt. No. 15-3, Ex. C).

In August 2022, the Parties entered into an agreement (the "Agreement") where Honest took over ownership of all products in inventory, and Butterblu sourced, marketed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

and sold these products in exchange for a service fee.  (*Id*. ¶ 3).  Honest alleges that Butterblu breached the Agreement by: (1) "failing to obtain Honest's approval before purchasing Products from suppliers, failing to share information with Honest as required by the  [Agreement]"; (2) "failing to follow Honest's directions on pricing the Products, failing to use best efforts to promote and sell the Products while maintaining the value and goodwill of the Honest brand"; (3) "failing to properly calculate amounts due under the Agreement"; and (4) "secretly developing and selling a baby apparel product line in direct competition with Honest Baby Clothing brand products."  (*Id*. ¶ 4).

In 2022, Honest created and designed a print design depicting stylized holiday trees (the "Feelin' Pine Print").  (*Id*. ¶ 18).  The FAC describes the Feelin' Pine Print as a pattern of "alternating holiday trees against a winter landscape background."  (*Id*. ¶ 19).  Honest utilized the Feelin' Pine Print in connection with the manufacture, advertising, and sale of baby and family related products, such as diapers, blankets, beanies, teethers, burp cloths and cotton pajamas.  (*Id*. ¶ 20).  Honest alleges that the pattern was "unique and distinctive," created and designed by Honest solely for use in connection with its products.  (*Id*. ¶ 19).

Honest also created a print design depicting a striped, pastel rainbow (the "Rainbow Stripe Print").  (*Id*. ¶ 22).  According to the FAC, the Rainbow Stripe Print is "a unique and distinctive pattern of a pastel rainbow-colored gradient in horizontal stripes that alternate with white stripes" created and designed by Honest solely for use in connection with Honest's genuine products.  (*Id*. ¶ 23).  Honest utilized the Rainbow Stripe Print in connection with the manufacture, advertising and sale of baby products, including crib sheets, changing pad covers, blankets, coveralls, towels, cotton diapers and sleepwear for infants.  (*Id*. ¶ 24).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

In 2023, Butterblu allegedly began to order products from suppliers without Honest's consent and placed orders that included intellectual property that Honest explicitly communicated to Butterblu that it did not have authority to use. (*Id*. ¶ 44). Around November 2025, Butterblu launched a baby apparel line which includes designs that Honest alleges are confusingly similar to and are unauthorized imitations of Honest's protected designs. (*Id*. ¶ 6). Honest had no prior knowledge of this launch and claims that Butterblu "actively concealed" its plan to launch its own products. (*Id*. ¶ 58).

Butterblu developed, and now markets and sells, its "Butterblu" line to the same customers that it was supposed to be using best efforts to sell Honest's products. (*Id*. ¶ 59). Honest alleges that Butterblu's online storefront and the overall appearance of the competing products themselves, copy the look, feel, and designs of its products. (*Id*.). Among these products is the Butterblu "Holiday Pine Time" pajamas that Honest alleges imitate Honest's Feelin' Fine Print, including use of the "distinctive" pattern of alternating holiday trees against a winter landscape background. (*Id*. ¶ 62). Butterblu also began offering for sale a "Pink Sunny Rainbow" sleeper that Honest alleges imitates the distinctive pattern of its Rainbow Stripe Print. (*Id*.). Honest alleges that Butterblu intentionally copied Honest's designs "to capitalize on the goodwill and recognition developed by Honest, and to deceive consumers into believing the [Butterblu] Products are associated with Honest." (*Id*. ¶ 65).

Honest further alleges the use of confusingly similar imitations of the Honest products is likely to deceive, confuse and mislead consumers and prospective consumers into believing the Butterblu products are affiliated or associated with, or sponsored by Honest. (*Id*. ¶ 66). This conduct allegedly resulted in actual consumer confusion. (*Id*. ¶ 67). Honest points to evidence that consumers have commented on online forums, such as Reddit, that Butterblu's products "look like" Honest products but "rebranded" or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

similar language, that Butterblu is the "creator" of Honest's products, and otherwise expressed confusion as to the source of and/or affiliation between the Parties' respective products. (*Id*.). Honest also alleges that "at least one" consumer has contacted Honest with questions about a recent purchase in which the consumer intended to buy Honest products from Amazon but instead received products bearing a Butterblu label. (*Id*.).

Honest also alleges that Butterblu misrepresented Honest's commercial activities by making misleading statements on the "A Note From our Founder" webpage, available at https://butterblu.com/pages/a-note-from-our-founder. (*Id*. ¶¶ 72, 73). Specifically, this webpage includes a statement that "Honest's new leadership team ultimately decided to exit the apparel space." (*Id*. ¶ 74). Honest argues that by posting this on the same website where Butterblu sells its competing baby apparel line, Butterblu has "misrepresented the nature, characteristics, and/or qualities of Honest's commercial activities, and the misrepresentation is likely to cause confusion, to cause mistake, or to deceive consumers." (*Id*. ¶ 76). Further, Honest argues consumers are likely to be confused and misled into believing that they can no longer purchase Honest baby apparel, such that they should purchase Butterblu's competing baby apparel line instead. (*Id*.). At the time that this statement was made, Butterblu had knowledge that Honest-branded apparel was still available for sale via Honest's authorized retail partners. (*Id*. ¶ 77).

### B.    Procedural Background

On January 2, 2026, Honest filed this action before the Court. (Compl., Dkt. No. 1). The Complaint alleges: (1) Breach of Contract, Including the Covenant of Good Faith and Fair Dealing; (2) Breach of Fiduciary Duty; (3) Unjust Enrichment; (4) Declaratory Relief. (*Id*.) On March 25, 2026, Honest filed the operative FAC and added the following additional causes of actions: Federal Trademark Infringement under 15 U.S.C. § 1114; Federal Trade Dress Infringement 15 U.S.C. § 1125(a); and Federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

False Advertising/Unfair Competition 15 U.S.C. § 1125(a).  (FAC, Dkt. No. 15).  On May 8, 2026, Butterblu filed the Motion to Dismiss before the Court.  (Mot.).  Honest filed its Opposition to the Motion to Dismiss on June 18, 2026.  (Dkt. No. 20).  Butterblu timely replied on June 26, 2026.  (Dkt. No. 21).

## II.    LEGAL STANDARD

### A.    <u>Rule 12(b)(1)</u>

As courts of limited jurisdiction, federal courts retain subject matter jurisdiction only over matters "authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Federal courts have jurisdiction where an action arises under federal law or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. §§ 1331, 1332(a).  "Where there is no underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims under [28 U.S.C.] § 1367."  *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001).  This is only the case, however, when the federal claim is so lacking in merit that it cannot be said to involve a federal controversy.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

In a diversity case, when a limited liability company is sued, the complaint must allege the citizenship of its constituent members.  *Johnson v. Columbia Props. Anchorage*, *LP*, 437 F.3d 894, 899 (9th Cir. 2006); see also *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-196 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

members"). A limited liability company 'is a citizen of every state of which its owners/members are citizens,' not the state in which it was formed or does business." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016).

### B. Rule 12(b)(6)

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate "only when [the complaint] fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see* Fed. R. Civ. P. 12(b)(6).

"[The] court must 'draw all reasonable inferences in favor of the nonmoving party'" and take its non-conclusory allegations as true. *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). The court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions ...").

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In addition, the allegation "must set forth what is false or misleading about a statement,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

and why it is false." *Id*. (quoting *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "'In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." leave should be granted in conformity with Rule 15(a)(2). *Hall v. City of Los Angeles*, 697 F.3d 1059, 1073 (2012) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

Butterblu first seeks to dismiss Counts 1, 2, 3, 5, and 6 with prejudice and without leave to amend. (Mot. at 2). It then requests the Court decline supplemental jurisdiction over any remaining state-law claims under 28 U.S.C. § 1367(c)(3), or in the alternative, if a federal claim survives, it requests the Court to decline supplemental jurisdiction under 28 U.S.C §§ 1367(c)(2). (*Id*.). Butterblu finally moves for the Court to find that complete diversity is absent.[2] (*Id*.). The Court addresses each argument in turn.

---

[2] The Court declines Butterblu's request for the Court to find complete diversity is absent because it's not germane to the Order and the Court does not issue advisory opinions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### A.    Federal Trademark Infringement (Count 1)[3]

Butterblu contends that "Count 1 should be dismissed because the FAC pleads a contract authorization and inventory dispute, not actionable trademark infringement." (Mot. at 11).  In support of its position, Butterblu raises two arguments—first, Honest does not adequately allege an unauthorized use in commerce, and second, the FAC fails to allege a likelihood of confusion has been established.  (*Id*. at 12-13).

The Lanham Act prohibits the use of a registered mark "in commerce," in "connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]"  15 U.S.C. § 1114(a).  "To state a cause of action for trademark infringement, a plaintiff must allege that (1) it has a trademark right; (2) that was used by defendant; (3) in a way that is likely to cause consumer confusion and thus infringe upon the trademark right."  *Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F.Supp.3d 945, 966 (N.D Cal. 2015); *see Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).  "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products."  *Adobe Systems Inc.*, 125 F.Supp.3d at 966 (quoting *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007)).  Butterblu does not dispute that Honest has a valid trademark or its use of this trademark.  Therefore, the Court analyzes whether the remaining two elements have been met.

First, Butterblu argues that Honest has pled a contract dispute "dressed" as a trademark infringement.  (Mot. at 11).  The Lanham Act prohibits the use of a registered mark "in commerce," in "connection with the sale, offering for sale, distribution, or

---

[3] Butterblu does not argue that Honest's trademark claim requires a heightened pleading standard under Rule 9(b), so the Court proceeds under a Rule 8 analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(a). The Lanham Act only applies to domestic infringing use in commerce. *Abitron Austria GmBH v. Hetronic Int'l, Inc.,* 600 U.S. 412, 420-21, 428-29 (2023) (Sections 1114(1)(a) and 1125(a)(1) extend only to domestic "use in commerce.")

A threshold question that the Court must address is the meaning of "use in commerce" under the Lanham Act. A mark is "deemed to be in use in commerce on goods when it is placed in any manner on the goods . . . and the goods are sold or transported in commerce." *Doctor's Best, Inc. v. Nature's Way Prods., LLC.*, 143 F.4th 1101, 1109 (9th Cir. 2025) (citing 15 U.S.C. § 1127).

Butterblu argues that Honest fails to "identify a specific domestic advertisement, consumer-facing offer, sale, distribution, or marketplace use" of Honest's trademarks, and therefore it cannot be a federal trademark infringement claim. (Mot. at 13). It argues that "[t]o transform this inventory and authorization dispute into a trademark claim, Honest must plausibly identify what Butterblu did in the marketplace after its authority expired and how that conduct communicated a false affiliation, sponsorship, or approval to consumers." (Reply at 3).

The FAC alleges that Butterblu "has used Honest's intellectual property without authorization" and "mislead consumers and prospective consumers into believing the Infringing Products are affiliated or associated with, or sponsored by, Honest." (FAC ¶¶ 6, 66). Honest also submits screenshots showing that Butterblu sold products that bear striking resemblance to its own products. (*Id*., Dkt. No. 15-6, Ex. F). The screenshots identify the infringing products and that Butterblu sold those products on its website, the screenshots do not show when the products were sold or offered. Viewing the pleadings in the light most favorable to Honest, the Court finds that the FAC supports

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

a plausible inference that Butterblu used in commerce Honest's trademarks in connect with an offering of products for sale.

Second, Butterblu argues that "[t]here is no pleaded marketplace confusion because there was no pleaded marketplace use."[4] (Mot. at 12-15). As stated above, Honest has pleaded market use. The Court finds that Honest has also pleaded marketplace confusion. Honest alleges that Reddit users have commented on forums about Honest and Butterblu products looking similar and have expressed confusion "as to the source of and/or the affiliation between the Parties' respective products." (FAC ¶ 67). The FAC also alleges that "at least one consumer has contacted Honest with questions about a recent purchase in which the consumer intended to buy Honest products from Amazon, but instead received products bearing a Butterblu label." (*Id*.). Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques. *Shakey's, Inc. v. Covalt,* 704 F.2d 426, 431 (9th Cir. 1983).

Honest argues that "many courts have held that an ex-licensee's continued use of a trademark is enough to establish likelihood of confusion." *State of Idaho Potato Comm'n v. G & T Term. Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). The Court agrees. In this case, Butterblu's alleged continued use of a trademark without Honest's permission is sufficient to create confusion. The Court therefore concludes that Honest has sufficiently pled the third element by providing plausible factual allegations of confusion as required by *Iqbal*.

Accordingly, the Court **DENIES** Defendant's Motion as to Count I.

---

[4] While all three elements must be met, the Court will analyze whether the third element has been met for judicial efficiency.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

### B.   Federal Trade Dress Infringement (Count II)

Butterblu argues that the federal trade dress infringement claim should be dismissed because Honest does not plausibly plead secondary meaning for its product prints.  (Mot. at 15).  To prove its trade dress infringement claim, the plaintiff has to prove that:  "(1) the trade dress is nonfunctional, (2) the trade dress had acquired secondary meaning, and (3) there is a substantial likelihood of confusion between [plaintiff's] and [defendant's] products."  *P&P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 958 (9th Cir. 2022) (citing *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009)).

Butterblu does dispute that first and third criteria but argues that the FAC fails to plausibly plead that either the Feelin' Pine Print or Rainbow Stripe Print acquired secondary meaning.  (Mot. at 15).  The Court agrees.

Secondary meaning can be established in many ways including, but not limited to, the following: "direct consumer testimony; survey evidence, exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying."  *Art Attacks Ink, LLC,* 581 F.3d at 1145 (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1151 (9th Cir. 1999)).  Intentional copying or mimicking "strongly supports an inference of secondary meaning."  *P&P Imports LLC,* 46 F.4th at 961;  *see generally Id*. (affirming that a triable issue of fact was created about secondary meaning when plaintiffs submitted proof of intentional copying and survey evidence showing that 63% of respondents said that the trade dress at issue comes from a single source/company).

Here, Honest alleges "Butterblu copied the look, feel, and designs of the [Honest] Products."  (FAC ¶ 59).  Honest provides side-by-side comparisons of its Feelin' Pine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Pajamas with Butterblu's "Holiday Pine Time" pajamas and a side-by-side comparison of Honest's Rainbow Stripe Print Sleeper to Butterblu's "Pink Sunny Rainbow" sleeper to show that Butterblu to show an inference of intentional copying.  (FAC ¶ 62); *see Adidas-Saloman Ag v. Target Corp.*, 228 F.Supp.2d 1192, 1209 (D. Or. 2002) (finding that a "cursory look" at the products that indicates that the trade dress of defendants' products incorporates significantly more similarities than differences from the original product supports an inference of intentional copying).  But "proof of deliberate copying is not determinative . . . competitors may intentionally copy product features for a variety of reasons."  *Walker & Zanger, Inc. v. Paragon Industries, Ind.,* 549 F.Supp.2d 1168, 1181 (N.D. Cal. 2007).  But pleading intentional copying alone is insufficient.

The FAC fails to raise a plausible inference that consumers associate the Honest's trade dress with Butterblu.  To show secondary meaning, a plaintiff must demonstrate "'a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 873 (9th Cir. 2002) (internal quotation omitted)."  581 F.3d at 1145.  Whether a product has acquired secondary meaning is a question of fact.  *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987).

The FAC alleges that "consumers have commented on online forums, such as Reddit, that "Butterblu's products 'look like' Honest's products but "rebranded" or similar language, that Butterblu is the 'creator' of Honest's products, and otherwise expressed confusion as to the source of and/or the affiliation between the Parties' respective products."  (FAC ¶ 67).  The FAC also alleges "at least one consumer has contacted Honest with questions about a recent purchase in which the consumer intended to buy Honest products from Amazon, but instead received products bearing a Butterblu label."  (*Id*.).  But these allegations are sufficient to allege secondary meaning at the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

motion to dismiss stage.  The forum posts did not discuss the Feelin' Pine Print or the Rainbow Stripe Print and, as Butterblu points out, these designs have not been adequately alleged by Honest to show a single source association.  (Mot. at 17).  The allegations only state that Butterblu's products "look like" Honest's products, but does not connect.  The FAC does not allege that buyers *actually* associate Honest's Feelin' Pine Pajamas with Butterblu's "Holiday Pine Time" and Honest's Rainbow Stripe Print Sleeper to Butterblu's "Pink Sunny Rainbow."

Under *Twombly,* the complaint must contain more than just a "formulaic recitation of the elements of a cause of action."  550 U.S. at 555.  Here, Honest recites the secondary element in its FAC, alleging that "[t]he Honest Designs are inherently distinctive or have acquired distinctiveness through secondary meaning."  (FAC ¶ 89).  Without pleading additional facts that could plausibly create a secondary meaning outside of showing proof of deliberate copying, Honest fails to meet the pleading standard required by *Twombly*.

The Court, therefore, **GRANTS** Butterblu's Motion as to Count II.  Count II is **DISMISSED** without prejudice and with leave to amend.

### C.    Federal False Advertising/Unfair Competition (Count III)

To dismiss the false advertising claim, Butterblu raises two arguments– first, that Honest's own public statements confirm the truth of the alleged false statement and, second, that the continued availability of remaining products during a sell-through or transition period does not render the "apparel-exit" statement false.  (Mot. at 19).  To state a claim for false advertising under the Lanham Act, a plaintiff must allege that: (1) defendants made a false statement of fact in a commercial advertisement; (2) the statement deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the purchasing decision;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(4) the false statement entered interstate commerce; and (5) defendant has been or is likely to be injured as a result of the false statement. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.* 68 F.4th 665, 671 (9th Cir. 2023) (citing *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997).

Butterblu argues that the statement at issue, i.e., that "Honest's new leadership ultimately decided to exit the apparel space," (FAC ¶ 97), is not false because Honest published in its public disclosures its goal of "exiting apparel." (Mot. at 19-21). To demonstrate falsity, a plaintiff "may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *SkyHawke Techs., LLC v. GolfzonDeca, Inc.*, No. SACV 191692-GW-PLAX, 2020 WL 6115095, at *9 (C.D. Cal. Aug. 3, 2020). Whether the alleged misrepresentations are false or misleading is a factual question generally inappropriate for resolution on a motion to dismiss. *See Spacone v. Sanford, LP*, No. CV1702419BROMRWX, 2017 WL 6888497, at *8 (C.D. Cal. May 11, 2017) (citing *Davis v. HBSC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012)).

Here, the FAC alleges that the statement is misleading because "consumers are likely to be confused and misled into believing that they can no longer purchase Honest baby apparel, such that they should purchase Butterblu's competing baby apparel line, and the Infringing Products instead." (FAC ¶ 76). The FAC alleges that "[a]lthough Honest's business relationship with Butterblu has ended, HONEST-branded apparel continues to be advertised, offered for sale, and sold to consumers, contrary to the representations made on Butterblu's website." (*Id*. ¶ 75). It further alleges that "Butterblu made this misleading statement notwithstanding that it knows that HONEST-branded apparel remains available for consumers to purchase through Honest's authorized retail partners and that, under the Agreement, Honest has a one-year sell off

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

period for existing inventory." (*Id*. ¶ 77).  Honest also argues that Butterblu knew that the statement was misleading because Honest explicitly stated in its earnings release that it was "'exiting our relationship with our current apparel provider' —i.e., Butterblu" and did not state that it was exiting the apparel space as a whole.  (Opp'n at 11; *see also* Ex. 6 at 3, Dkt. No. 18-25).

At this stage, the Court need not rule on whether the statement is actually false.  Instead, the Court merely determines whether Honest has pled sufficient facts to survive a motion to dismiss.  Taking the Honest's allegations as true, as the Court is required to do, the Court finds that Honest pled falsity sufficiently.  This allegation also meets the second and third elements since the statement was posted on the same website where consumers purchase the alleged infringing products and therefore, the statement is visible to a "substantial segment" of the audience and, if taken as true, would be likely to influence purchasing decisions.  Butterblu does not dispute this fact.  The same facts support the fourth element because the statement "entered interstate commerce"— it was posted on Butterblu's website where consumers could purchase the alleged infringed products.   Lastly, Honest alleges that its injuries include "damage to its goodwill" that will continue "unless injunctive relief is granted," therefore the fifth element is sufficiently pled.  (FAC  ¶ 101).

Accordingly, the Court **DENIES** Butterblu's motion as to Count III.

**D.      Breach of Fiduciary Duty (Count V)**

Butterblu argues that the breach of fiduciary duty claim should be dismissed because Butterblu cannot plausibly allege that Butterblu owed Honest any fiduciary duties.  (Mot. at 22-23).  Specifically, Butterblu argues that the FAC fails to "identify any extra-contractual promise to subordinate its interests to Honest's … or assume duties of loyalty beyond the negotiated terms" that could give rise to a fiduciary duty.  (*Id*. at 24).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party.  Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *In re Marriage of Varner*, 55 Cal. App. 4th 128, 141 (Ct. App. 1997) (internal citations omitted).  The contractual right to contingent compensation in the control of another has never, by itself, been sufficient to create a fiduciary relationship where one would not otherwise exist.  *Wolf v. Superior Court*, 106 Cal. App. 4th 25, 30-31 (Ct. App.2003).

Here, Honest alleges in its breach of fiduciary duty claim that Butterblu "often had exclusive knowledge of critical information about the [p]roducts, including with respect to manufacturing, shipments, distribution, customer service, sales, returns and marketing."  (FAC ¶ 109).  Honest cites to *Cohen v. TIAA-CREF*, to support the notion that a fiduciary duty can be found to exist under California law "based on [Defendant's] unique position of superior knowledge and access to information and control over Plaintiff's funds."  Case No. SACV 20-02387-CJC, 2021 WL 8776706, at *3 (C.D. Cal., Oct. 20, 2021).  That case, however, is distinguishable from the one before the Court here.  In *Cohen*, the court factored into its decision that plaintiffs sufficiently pled a fiduciary duty by viewing the relationship as a "broker-customer relationship."  There, the court relied on authority that there is a fiduciary duty in every broker-customer relationship.  *Id.* at *4 (citing *Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1533 (Ct. App. 1989).  No such relationship exists here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

"California law generally does not impose fiduciary duties on commercial parties in arms' length relationships, but may find a fiduciary relationship in special situations." *Kabushiki Kaisha Megahouse v. Anjar Co. LLC*, No. 2:14-CV-00598-CAS, 2014 WL 5456523, at *10 (C.D. Cal. Oct. 20, 2014). "Fiduciary obligations are not *necessarily* created when one party entrusts valuable intellectual property to another for commercial development in exchange for the payment of compensation contingent on commercial success." *Id*. at *8. While Honest alleges, among other things, that Butterblu had an obligation to: (1) "use best efforts to promote and sell Products on Honest's behalf" as part of a confidential relationship," (FAC ¶ 32), (2) use Honest's marks only "on behalf of Honest," (FAC ¶ 33), (3) sell "[p]roducts on Honest's behalf,"( FAC ¶ 32), these obligations were created when Parties entered into the Agreement. (*See* Ex H, Dkt. 18-11). The Court therefore finds that Honest fails to allege any misconduct other than breaches of the Agreement and fail to allege any facts that demonstrate a fiduciary relationship was created in "[a] special situation[], such as when unusual circumstances give rise to an unusual level of trust or vulnerability." *Kabushiki Kaisha Megahouse*, 2014 WL 5456523, at *10. The Court, therefore, **GRANTS** Butterblu's Motion as to Count VI. Count VI is **DISMISSED** without prejudice and with leave to amend.

E.    **Unjust Enrichment (Count VI)**

Butterblu argues that the unjust enrichment claim should be dismissed because Honest cannot plausibly allege unjust enrichment as Honest's claim is not an independent equitable claim. (Mot. at 24). The Court disagrees.

"[T]here is no cause of action in California for unjust enrichment." *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003); *see also Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) (noting unjust enrichment is not a standalone cause of action under California law). Unjust enrichment is not a claim for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

relief per se, but a "general principle underlying various legal doctrines and remedies" that is synonymous with restitution. *Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1133 (N.D.Cal.2009) (*citing Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (Cal.Ct.App.2003)). "[A] plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020). "[A]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger v. Amazon.com. Inc.,* 311 F. Supp. 2d 838, 856 (N.D. cal. 2004). This rule is applies even when unjust enrichment is pleaded in the alternative. *See Klein v. Chevron U.S.A., Inc.,* 202 Cal. App. 4th 1342, 1389 (Ct. App.  2012) (precluding plaintiff from asserting a quasi-contract claim under a theory of unjust enrichment when plaintiffs breach of contract claim pleaded the existence of an enforceable contract, and their unjust enrichment claim did not deny the existence or enforceability of that agreement).

While the FAC alleges that a valid, express contract existed between Honest and Butterblu,  (FAC ¶ 4), it also alleges that "unjust enrichment as to matters ***not expressly covered*** by the Agreement or other contracts between the Parties, for periods during which the Agreement was terminated, and in the alternative to its breach of contract claim ***to the extent any contract or contract term is found invalid, unenforceable, or inapplicable***." (FAC ¶ 114) (emphasis added). Because Honest alleges an unjust enrichment claim as an alternative in the event that the "Agreement or other contracts between the Parties" do not cover those matters or "to the extent any contract or contract term is found invalid, unenforceable, or inapplicable," the Court finds that Honest's unjust enrichment claim was properly pled in the alternative. *See Clemmens v. Am.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

*Honda Motor Co., Inc.*, No. 2:24-CV-09728-ODW (SKX), 2026 WL 765426, at *11 (C.D. Cal. Mar. 18, 2026) (noting that at the pleading stage, the plaintiffs' allegations were sufficient to assert unjust enrichment in the alternative in the event that the expressed contract was unenforceable).

The Court, therefore, **DENIES** Butterblu's Motion as to Count VI.

### F.      Supplemental Jurisdiction

Butterblu requests that this Court decline supplemental jurisdiction over any remaining state-law claims under 28 U.S.C. § 1367(c)(3), or in the alternative, if a federal claim survives, it requests the Court to decline supplemental jurisdiction under 28 U.S.C § 1367(c)(2).

Federal district courts possess supplemental jurisdiction over state law claims that are so related to the federal claims within the court's original jurisdiction that they form part of the same "case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367.  A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together.  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).  A court may decline to exercise jurisdiction over a supplemental state law claim if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).  Declining supplemental jurisdiction would be appropriate where "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."  *Peterson v. Alaska Commc'n. Sys. Grp., Inc.,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

328 F.R.D. 255, 265 (D. Alaska 2018) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).  "In order to decide whether to exercise jurisdiction over pendent state law claims, a district court should consider . . . at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  *Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 715 (9th Cir. 1990) (internal quotation omitted).

Butterblu argues that the state law claims predominate over the federal claims. (Mot. at 27).  The Court disagrees.  The remaining federal claim shares the same proof, scope of issues raised and requests the same remedy as the state claims.  Further, it would be more efficient and convenient for this entire case to be heard in the same court.   The Court thus finds declining supplemental jurisdiction inappropriate.  Accordingly, the Court **DENIES** Butterblu's Motion to decline supplemental jurisdiction.

### G.    Leave to Amend

Counts I and II are **DISMISSED** with leave to amend.  The decision of whether to grant leave to amend is "within the discretion of the district court."  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008);  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  The policy of granting leave is to be applied with "extreme liberality."  *Eminence Capital, LLC v. Aspeon*, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).  "A court should not deny leave to amend except in the presence of (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and/or (4) futility of amendment."  *Incredible Features, Inc. v. BackChina*, LLC, Case No. CV 20-943-DMG, 2020 WL 8457480, at *1 (C.D. Cal. Dec. 28, 2020).  "Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption in favor of granting leave to amend."  *Eminence Capital, LLC*, 316 F.3d at 1052 (emphasis omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**IV.     CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  Counts II and V are **DISMISSED** without prejudice and with leave to amend.  If Honest chooses to file an amended complaint, it may do so within twenty-one (21) days of this Order.  If Honest chooses not to amend, then the case will proceed with the surviving claims.  Butterblu's Motion is **DENIED** as to Counts I, III and VII.  The Motion to Decline to Accept Supplemental Jurisdiction Over Plaintiff's State-law Claims is **DENIED**.

**IT IS SO ORDERED.**